UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILLIP AINSWORTH, et. al.,

                 Petitioners,

          v.

SPARTAN CAPITAL SECURITIES, LLC; and
JOHN LOWRY,

                 Respondents.

25 Civ. 5039 (DEH)

**MEMORANDUM
OPINION AND ORDER**

DALE E. HO, United States District Judge:

Before the Court are competing motions concerning two arbitration awards in separate FINRA arbitration cases: one seeking to vacate the awards, and the other to confirm them. After a dismissal with prejudice was awarded in both cases, Phillip Ainsworth, Alexander Catto, Fred Weidner, Brian Campbell, Marion Rus, Steve Butz, Steven Krasne, Dwight Casey, Dennis Francy, David Falk, Guy Wood, James Hitchcock, Lorraine Hitchcock, Maurice Heard, and James Hamlett (collectively, "Petitioners") filed a Petition to Vacate ("Pet. to Vacate"), ECF No. 1, seeking vacatur of both awards, one of which includes an award of forum and attorney's fees. In response, Spartan Capital Securities, LLC ("Spartan") and John Lowry ("Lowry") (collectively, "Respondents") filed a Motion to Confirm ("Mot. to Confirm"), ECF No. 8, opposing the Petition and asking the Court to confirm the awards. Resp't's Mem. of Law in Opp'n to Pet. to Vacate and in Supp. of Cross-Mot. to Confirm ("Mem. to Confirm"), ECF No. 9.

For the reasons set forth below, the Petition to Vacate the Arbitration Awards is **DENIED**, Respondent's Motion to Confirm the Arbitration Awards is **GRANTED**, and, accordingly, the Arbitration Awards are **CONFIRMED**.

**BACKGROUND**

This case concerns two separate arbitrations involving Respondents Spartan Capital Securities, LLC and John Lowry (collectively, "Respondents"). The first concerns Petitioners Phillip Ainsworth, Alexander Catto, Fred Weidner, Brian Campbell, Marion Rus, Steve Butz, Steven Krasne, Dwight Casey, Dennis Francy, David Falk, and Guy Wood (collectively, the "Ainsworth Petitioners"), who filed a claim against Respondents seeking damages of more than $1.3 million relating to improper brokerage account activity (the "Ainsworth Arbitration").[1] *See* Pet. to Vacate ¶ 23. The second action concerns Petitioners James Hitchcock, Lorraine Hitchcock, Maurice Heard, and James Hamlett (collectively, the "Hitchcock Petitioners"), who filed a claim against Respondents seeking damages of nearly $1.6 million, also relating to improper brokerage account activity (the "Hitchcock Arbitration"). *See id.* ¶ 33. Both the Ainsworth and Hitchcock Petitioners were originally represented by Brandon Dei of SA Law Group. *See id.* ¶¶ 24, 34.

The Ainsworth Arbitration began on March 17, 2023. After filing a Statement of Claim and receiving an Answer from Respondents, the Ainsworth Petitioners took no further action to progress the case, despite submitting the case "as an expedited hearing," and as a result, the panel issued an order on February 13, 2024 requesting a status update from the parties within 30 days in order to "bring [the] case to its logical conclusion." *See* Elliot Decl., Ex. 1, ECF No. 10-1. The Ainsworth Petitioners did not comply with this order; nor did they engage with Respondents' discovery requests. *See* Elliot Decl., Ex. 3, at 1-4, ECF No. 10-3.[2] Finally, after nearly two years of the Ainsworth Petitioners' failure to produce responsive discovery material and general

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[2] All page numbers are in reference to ECF-stamped numeration.

2

unresponsiveness, on January 15, 2025, the FINRA-appointed three-person arbitration panel granted Respondents' Motion to Compel. *See* Pet. to Vacate, Ex. 2 (the "Ainsworth Award") at 4, ECF No. 1-2; Elliot Decl., Ex. 4, at 2, ECF No. 10-4. The panel also informed the Ainsworth Petitioners that continued noncompliance may result in sanctions, including dismissal. *See* Elliot Decl., Ex. 4, at 2.

On January 20, 2025, Mack Press, also of SA Law Group, filed a Notice of Appearance as counsel for the Ainsworth Petitioners, followed by a letter on February 6, 2025, explaining that he would be taking over the case from Mr. Dei, who had, unbeknownst to anyone, suffered a mental and physical breakdown due to a parasite from a cat. *Id.* ¶ 16; Pet. to Vacate, Ex. 1 (the "Ainsworth Letter") at 2-3, ECF No. 1-1. The Ainsworth Letter promised prompt compliance with discovery requests—a promise immediately followed by continued incomplete document production. *See* Elliot Decl., Ex. 5, at 3-4, ECF No. 10-5. On February 21, 2025, Respondents filed a Motion to Dismiss and Seek Sanctions. *See id.* at 1-11. The Ainsworth Petitioners filed an opposition after the deadline but did not ask for an adjournment of oral argument at that time; instead, they waited until March 18, 2025, the day prior to the scheduled hearing, to request a delay in the scheduled hearing. *See* Pet. to Vacate, Ex. 1, at 4-6; Elliot Decl., Ex. 6, ECF No. 10-6. The panel declined to grant the adjournment, and after hearing oral argument, issued an order dismissing the Ainsworth Petitioners' claims with prejudice. *See* Ainsworth Award at 4.

Separate from the Ainsworth Arbitration, the Hitchcock Petitioners—also represented by Mr. Dei of SA Law Group—filed their claim against Respondents on March 27, 2024. Elliot Decl. ¶ 28. On August 8, 2024, a different FINRA-appointed three-person arbitration panel granted Respondents' Motion for a More Definitive Statement of Claim, ordering a response by September 20, 2024. Pet. to Vacate, Ex. 4 (the "Hitchcock Award") at 4, ECF No. 1-4. The Hitchcock Petitioners failed to submit a more definitive statement and did not respond to any other

3

communications. *Id.* On December 12, 2024, Respondents filed a Motion to Strike, Dismiss, and Assess Fees. *See* Elliot Decl., Ex. 8, ECF No. 10-8. The Hitchcock Petitioners filed no response to the motion but submitted a request to update counsel on December 20, 2024, which remained ineffective until Mr. Press filed a Notice of Appearance more than a month later on January 22, 2025. *See* Elliot Decl., Ex. 9, ECF 10-9; Hitchcock Award at 4. On January 10, 2025, Respondents filed a Motion for Sanctions, as well as to assess fees to the Hitchcock Petitioners; again, no response was filed. *See* Elliot Decl., Ex. 10, ECF No. 10-10; Hitchcock Award at 3. On February 5, 2025, Mr. Press filed a nearly identical letter to the Ainsworth Letter, explaining Mr. Dei's illness and requesting an extension to cure deficiencies and respond to Respondents' motions; he sought no other adjournments. *See* Elliot Decl. ¶ 46; Elliot Decl., Ex. 11 (the "Hitchcock Letter"), ECF No. 10-11. On February 20, 2025, the panel issued an order dismissing the Hitchcock Petitioners' claims with prejudice and sanctioned the Hitchcock Petitioners in the amount of attorney's fees. *See* Elliot Decl., Ex. 13 (the "February Order") at 4-5, ECF No. 10-13. The order was restated on March 14, 2025, awarding attorney's fees in the amount of $19,743.00. *See* Hitchcock Award at 4.

Petitioners now seek to vacate both the Ainsworth Award and the Hitchcock Award (collectively, the "Awards") on the grounds that (1) the arbitrators' decisions to deny adjournments and to dismiss with prejudice served as a "denial of fundamental fairness" and (2) the arbitrators' dismissals with prejudice "exceeded their powers." *See* Pet'r's Mem. of Law in Reply ("Mem. in Reply") at 6, ECF No. 12; Pet. to Vacate ¶ 55. Respondents ask the Court to instead confirm the Awards "because none of the four statutory grounds for vacatur have been met." Mem. to Confirm at 7. Respondents also argue that the Petition is time-barred as to the Hitchcock Arbitration. *Id.*

4

## LEGAL STANDARD

When asked to review an arbitration award under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), the Court "can confirm and/or vacate the award, either in whole or in part." *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).[3] A petition for vacatur, like the one before the Court, is "not an occasion for *de novo* review of an arbitral award"; rather, its review is "severely limited." *See id.* at 71-72. "[A]n award is presumed valid unless proved otherwise" "because the FAA establishes a strong presumption in favor of enforcing an arbitration award." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., Ltd.*, 57 F.4th 372, 382 (2d Cir. 2023). Under the FAA's "streamlined process for a party seeking a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it," the Court must confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA, which permit vacatur of an arbitrator's decision "only in very unusual circumstances." *See Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021); 9 U.S.C. § 9; *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013).

FAA § 10(a) sets forth four "narrow grounds" for vacating an arbitration award, permitting vacatur "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators…; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so

---

[3] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated.

imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *See Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993), 9 U.S.C. § 10(a).

Given that § 10 "permits vacatur of an arbitral award in only four specifically enumerated situations, all of which involve corruption, fraud, or some other impropriety on the part of the arbitrators," petitioners seeking vacatur "must clear a high hurdle." *See Duferco Int'l Steel Trading v. T. Klaveness Shipping*, 333 F.3d 383 (2d Cir. 2003); *Pacelli v. Vane Line Bunkering, Inc.*, 549 F. Supp. 3d 306, 313 (S.D.N.Y. 2021) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). The Court will "uphold a challenged award as long as the arbitrator offers 'a barely colorable justification for the outcome reached.'" *ReliaStar Life Ins. Co. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2013)).

## DISCUSSION

### I.    Time Bar as to the Hitchcock Petitioners

As an initial matter, the Petition is untimely as to the Hitchcock Arbitration. Under 9 U.S.C. § 12, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. "There are 'no exceptions' to this strict three-months limitations period." *Moster v. Credit Suisse Sec. (USA) LLC*, No. 22 Civ. 999, 2022 WL 4467626, at *5 (S.D.N.Y. Sept. 25, 2022) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984)). Here, the Hitchcock Award was initially filed on February 20, 2025. Therefore, under the FAA's three-month deadline,

the period to petition to vacate the Hitchcock Award ended on May 19, 2025.[4]  The Petition, however, was not filed until June 16, 2025.  It is therefore untimely.

The Hitchcock Petitioners contend that the three-month clock did not start until March 14, 2025, the day on which the Hitchcock Award was re-filed with the additional inclusion of attorney's fees.  They further argue that the initial February Order cannot constitute an official award under FINRA Rule 13904, which, among other things, provides that an award must meet various specifications, including that it be signed by a majority of the arbitrators, which the February Award failed to meet.  *See* Mem. in Reply at 9-11.

But FINRA's rules do not determine when an award is "final" for purposes of calculating the three-month deadline under the FAA.  *See Moster*, 2022 WL 4467626 at *6.  The Second Circuit's test for finality is whether the arbitrators' decision "resolved all issues submitted to arbitration . . . so that no further litigation [was] necessary to finalize the obligations of the parties." *Id.* (quoting *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 177 (2d Cir. 1998)).  Under that test, the initial February Award was final.  Although Petitioners argue the February Order was not final because it did not include attorney's fees (which were not addressed until the March order), "[i]t is well-settled law that unresolved attorney's fees do not affect finality" for purposes of calculating the FAA's three-month time bar.  *Id.* (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988)).  And FINRA Rule 13904's technical specifications, which Petitioners cite a lack of compliance with, are irrelevant here because they "[do] not supersede the Second Circuit's test for finality." *Id.*

---

[4] The Federal Rules of Civil Procedure apply unless the FAA "provide[s] other procedures." *See* Fed. R. Civ. P. 81(A)(6)(B).  Because the FAA does not proscribe its own procedures for the computation of time, Rule 6 applies, meaning that three months from February 20, 2025 (the date of the February Order) is May 19, 2025—the deadline for a petition to be filed regarding the Hitchcock Award.  *See* Fed. R. Civ. P. 6(A)(1).

Because it resolved all issues submitted to arbitration, the February Order was final, and the Petition to Vacate—which was filed approximately four months later—was untimely as to the Hitchcock Award.

**II.      The Merits of the Petition to Vacate the Arbitration Awards**

Leaving aside the issue of timeliness, the Petition to Vacate the Arbitration Awards is meritless.  Petitioners ask this Court to vacate both Arbitration Awards in full, including the award of attorney's fees and costs in the Hitchcock Arbitration.  *See* Pet. to Vacate.  Petitioners seek vacatur under the FAA, claiming in both cases that the Arbitrators (1) "were guilty of misconduct" under § 10(a)(3) and (2) "exceeded their authority" under § 10(a)(4).  *See id.* ¶¶ 45, 61; 9 U.S.C. §§ 10(a)(3)-(4).  The Court addresses these contentions in turn.

**A. Fairness of the Arbitration**

Under § 10(a)(3), vacatur is warranted if the arbitrator engaged in misconduct "in refusing to postpone the hearing, upon sufficient cause shown," "in refusing to hear evidence pertinent and material to the controversy, or in engaging in "other misbehavior" that prejudiced a petitioner's rights.  *See* 9 U.S.C. § 10(a)(3).  Arbitrators are "not required to hear all the evidence proffered by a party" but only to "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997).  With regard to postponements, in particular, arbitrators "must be empowered to enforce procedural deadlines," and "[t]he time frames that arbitrators allow under approved schedules for discovery … ordinarily are sufficient to provide [the parties] with adequate opportunity to present evidence and arguments." *See Landmark Ventures, Inc. v. InSightec. Ltd.*, 63 F. Supp. 3d 343, 352 (S.D.N.Y. 2014).  A Court's "review is restricted to determining whether the procedure was fundamentally unfair," and unless "fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp.*, 120 F.3d at 20.

8

According to Petitioners, the arbitrators in both the Ainsworth and Hitchcock Arbitrations engaged in misconduct "in refusing to postpone the hearing/extend the deadlines to allow Petitioners' new attorney time to remedy any of the alleged discovery deficiencies." *See* Pet. to Vacate ¶ 45.  In the Ainsworth Arbitration, however, Petitioners never even sought a discovery extension. *See* Pet. to Vacate, Ex. 1, at 10-11.  And in the Hitchcock Arbitration, Petitioners never made a request for an adjournment. *See* Pet. to Vacate, Ex. 3.  Thus, at least with respect to these issues, the panel could not have engaged in misconduct in refusing to grant requests that were never made. *See Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 31 (S.D.N.Y. 2017) ("[A] party is not denied a fundamentally fair hearing if it did not avail itself of the opportunity to be heard[.]").

With respect to matters that were actually raised before the panels, the Court concludes that Petitioners' arguments fail.   In the Ainsworth Arbitration, Petitioners requested an adjournment of the hearing on March 18, 2025, one day prior to the scheduled hearing.  Pet. to Vacate, Ex. 1, at 10-11.  The Ainsworth panel acknowledged receipt of Petitioners' belated request, but decided not to grant it. *See* Ainsworth Award at 4.  The panel had the discretion to adjourn the hearing under FINRA Rule 12601, which states that a hearing "*may* be postponed … [b]y the panel, upon motion of a party," but that rule does not *mandate* postponement upon such a motion. *See* FINRA Rule 12601(a)(2) (emphasis added).  And if a motion to postpone is made within 10 days of the date that the hearing is scheduled to begin, as it was here, the panel may *not* grant "unless [it] determines that good cause exists." *See id.*  Under the facts here, the Court cannot find that the denial was fundamentally unfair, or rendered the arbitration itself fundamentally unfair.

Nevertheless, Petitioners argue that good cause was shown in the form of Mr. Dei's illness and thus, that the motion for an extension should have been granted. *See* Pet. to Vacate ¶ 22.  But Mr. Dei's illness—which Petitioners notified the panels about in early February 2025—does not explain why the Ainsworth Petitioners failed to request an adjournment until more than one month

9

later, on March 18, 2025, the day before the hearing.  Given the belated nature of their adjournment request, which followed repeated failures to comply with discovery and meet and confer requests, the arbitrators' decision that good cause was not shown "was well within [the panel's] broad discretion to enforce deadlines."  *See Landmark Ventures*, 63 F. Supp. 3d at 352 (finding the arbitrator had authority to deny petitioner's extension request in light of "repeatedly missed deadlines, … improper[ly] [filed], untimely requests even after being given a second chance to comply, and "fail[ure] to follow Orders").  While Petitioners may disagree with the panel's evaluation of the impact of Mr. Dei's illness on the Ainsworth Arbitration, "where the losing party in an arbitration merely takes issue with the weight accorded to certain evidence actually considered by the panel or with the panel's rejection of arguments related to such evidence," it is "clear that vacatur is not appropriate under Section 10(a)(3)."  *See In re Arb. Between Interdigital Commc'ns Corp. & Samsung Elecs. Co., Ltd.*, 528 F. Supp. 2d 340, 352.  The Court concludes that, under § 10(a)(3), the Ainsworth Arbitration was not fundamentally unfair.

Turning to the Hitchcock Arbitration, Petitioners similarly argue that this arbitration was rendered unfair by the panel's rejection of their discovery extension request.  *See* Mem. in Reply at 7.  Petitioners filed that request on February 5, 2025, seeking more time to cure discovery deficiencies, followed by a reply on February 14, 2025 in further support of the request and in response to Respondents' opposition.  *See* Elliot Decl. ¶¶ 46, 48; *id.*, Ex. 11.  But the panel considered and denied the request on the basis of the Hitchcock Petitioners' conduct over the course of the prior year, noting that a "new claim was never properly filed," that Respondents reported "little to no communication between the parties," and that despite FINRA staff reaching out to Petitioners' representative, "nothing was filed."  *See* February Order at 4.  The panel also noted in its explanation of the dismissal its skepticism that a discovery extension "would be productive," given that it took new counsel nearly a month to request the extension, a "lack of

initiative" the panel found "disappointing." *Id.* at 5. Again, FINRA Rule 12601 only states that a panel *may* consider extension requests not that it *must* grant them, and accordingly, the panel in the Hitchcock Arbitration was well within its authority to deny the request here.

Petitioners argue that a "one month delay cannot possibly have been grounds to deny a for cause request for an extension of time." *See* Pet. to Vacate ¶ 54. But the panel specifically noted that it was sensitive to concerns raised by Petitioners' counsel; that is, it considered the Hitchcock Petitioners' arguments, but ultimately simply did not find them persuasive. Both the panel's determination that good cause was not shown by way of the Hitchcock Letter, and its decision to deny the extension request, were well within the panel's discretion to manage the schedule and enforce deadlines. *See Landmark Ventures*, 63 F. Supp. 3d at 352.

Because neither panel violated fundamental fairness, the Court concludes that vacatur is unwarranted pursuant to § 10(a)(3).

### B. Scope of Authority

Petitioners also seek to vacate both arbitration awards on the basis that the arbitrators exceeded their authority under § 10(a)(4) by dismissing both cases with prejudice. *See* Pet. to Vacate ¶ 61. The Court concludes that there is no basis to vacate the panels' respective decisions to dismiss with prejudice.

Section 10(a)(4) provides for vacatur of an award if the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings to [§ 10(a)(4)] in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." *See ReliaStar Life Ins. Co.*, 564 F.3d at 85 (quoting *Banco de Seguros*, 344 F.3d at 262). Thus, "in order to vacate an award [under § 10(a)(4)], 'it is not enough for [P]etitioners to

11

show that the panel committed an error—or even a serious error.'" *See Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310, 315 (S.D.N.Y. 2013) (quoting *Stolt-Nielsen S.A.*, 559 U.S. at 671). Instead, vacatur is appropriate only when the panel "stray[ed] from interpretation and application of the agreement [between the parties] and effectively 'dispensed [its] own brand of industrial justice.'" *See Stolt-Nielsen S.A.*, 559 U.S. at 663 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)); *see, e.g., Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Pan., S.A.*, 312 F.2d 299, 300-01 (2d Cir. 1963) (vacating an award where the arbitrators exceeded their authority by determining the liability of a corporation not party to the arbitration); *In re Arb. Between Melun Indus., Inc. & Strange*, 898 F. Supp. 990, 994-95 (S.D.N.Y. 1990) (vacating an award where the arbitrator decided matters outside the dispute submitted to arbitration).

Under FINRA Rule 12212(c), a panel may "dismiss a claim, defense or arbitration with prejudice as a sanction for material and intentional failure to comply with an order of the panel if prior warnings or sanctions have proven ineffective." Petitioners argue that the respective panels' decisions to dismiss with prejudice were impermissible because "the failure to comply cannot possibly be deemed *intentional* since it was due to a debilitating physical and mental illness by prior counsel." *See* Pet. to Vacate ¶ 56 (emphasis added). The Court, however, rejects the argument as an improper entreaty for the Court to evaluate "whether the arbitrators correctly decided [the] issue" of intentionality. *See Banco de Seguros*, 344 F.3d at 262. Instead, the Court must limit its inquiry to "whether the arbitrator[s] acted within the scope of [their] authority." *See id.*[5] The Court concludes that under FINRA Rule 12212(c), each panel "had the power based on

---

[5] To the extent that Petitioners ask this Court to conclude that the arbitrators erred in concluding, as a factual matter, that Petitioners' non-compliance was intentional, that is beyond the scope of this Court's review. That is, while Petitioners may disagree with the arbitrators'

12

the parties' submissions or the arbitration agreement" to dismiss the claims with prejudice.  *See id.*

In the Ainsworth Arbitration, the panel explicitly warned Petitioners of potential sanctions for their failures to respond to Respondents' discovery requests or even to a letter requesting to meet and confer.  *See* Elliot Decl., Ex. 4, at 2.  Then, even after the panel granted the Motion to Compel on January 15, 2025 and provided explicit warning that further noncompliance may result in dismissal, the Ainsworth Petitioners still failed to produce the majority of documents requested and filed their opposition to Respondent's Motion to Dismiss one day after it was due.  *See* Elliot Decl., Ex. 5, at 3-4; Elliot Decl. ¶ 22.  Notably, five days after the Motion to Compel was granted, new counsel had officially taken over the representation,[6] mitigating any lingering impact of Mr. Dei's illness.  *See* Elliot Decl. ¶ 16.  The Court concludes that, under these facts, the panel acted well within its authority under FINRA Rule 12212(c) in dismissing the action with prejudice.

Turning to the Hitchcock Arbitration, Petitioners attempt to draw a distinction by arguing that no explicit "prior warning or sanction" was given in that matter, and that, accordingly, the panel could not dismiss with prejudice under FINRA Rule 12212(c).  *See* Pet. to Vacate ¶ 60.

---

"evaluation of the evidence" as to intentionality, the award "may not be vacated because of [Petitioners'] disagreements" with that factual determination.  *See Data & Dev., Inc. v. InfoKall, Inc.*, 513 F. App'x 117, 118 (2d Cir. 2013) (summary order).  Even if there were "strong evidence favoring [Petitioners]" on this issue—and, for reasons stated herein, there does not appear to be any here—this Court "may not conduct a reassessment of the evidentiary record." *See Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004).

[6] There is some ambiguity as to precisely when counsel had knowledge of its outstanding obligations in the Ainsworth Arbitration.  Mr. Dei submitted a letter in the Ainsworth Arbitration on April 3, 2024 providing notice of his illness and a desire to "get the case back on track," and then filed a request to update counsel in the Hitchcock Arbitration on or before December 20, 2024. *See* Elliot Decl., Ex. 9; *id.*, Ex. 2.  In any event, new counsel appeared on January 20, 2025, but as noted, the Ainsworth Petitioners continued to fail to meet their discovery obligations, failed to timely oppose Respondents' Motion to Dismiss and Seek Sanctions, and did not request an adjournment of the hearing until March 18, 2025.

However, FINRA Rule 12409 affords arbitrators "the authority to interpret and determine the applicability of all provisions under the Code," and all "interpretations are final and binding upon the parties," which the Hitchcock Petitioners agreed to when they signed the Submission Agreement[7] on March 17, 2023. *See* FINRA Rule 12409; Pet. to Vacate, Ex. 2, at 2. This authority naturally includes the ability to interpret Rule 12212(c). *Cf. Piston v. Transamerica Cap., Inc.*, 823 Fed. App'x 553, 556 (10th Cir. 2020) ("Rule 13212's meaning is a question of contract interpretation because the parties' agreement incorporated the FINRA Code Rules."); *see also Lawrence v. Raymond James Fin. Servs., Inc.*, No. 18 Civ. 6590, 2019 WL 120727, at *3 (S.D.N.Y. Jan. 4, 2019) (finding that Rule 13413 gives arbitrators power to interpret and determine the applicability of [various FINRA Rules]").[8]

Here, it is a plausible interpretation of Rule 12212 that the panel gave the requisite "prior warning" when it granted the Motion for a More Definitive Statement of Claim and ordered a response by September 20, 2024—a date that came and went with no response to the motion filed by the Hitchcock Petitioners. *See* Hitchcock Award at 4; *see also Piston*, 823 Fed. App'x at 556-57 (finding that the panel's "efforts to advise … counsel of the need to comply with FINRA rules and deadlines" were sufficient to establish prior warnings under Rule 13212); *Morgan Stanley*

---

[7] The FINRA Submission Agreement contains a clause asking the parties to acknowledge that they "have read the procedures and rules of FINRA relating to arbitration" and to "agree to be bound by these procedures and rules." *See* FINRA ARBITRATION Submission Agreement, https://www.finra.org/sites/default/files/ArbMed/p009438.pdf.

[8] FINRA Rules 13000 Series governs industry disputes, while Series 12000 governs customer disputes—like the two arbitrations in this case. *See* FINRA Rules, https://www.finra.org/rules-guidance/rulebooks/finra-rules. Rules 12409 and 13413 both govern rule interpretation and employ identical language, and Rules 12212 and 13212 both govern dismissals with prejudice and employ identical language. Due to the lack of case law regarding Rules 12409 and 12212, the Court references case law concerning the identical counterparts found in the 13000 Series.

*Smith Barney LLC v. Shefer*, No. 22 Civ. 21542, 2022 WL 17662905, at *4 (S.D. Fla. Dec. 14, 2022) (finding Rule 13212 satisfied solely based on the panel's statement that it found "dismissal justified in light of the amount of orders disregarded before and during the hearing, the unpredictable actions of Respondent's counsel during the hearing, and the need for excessive executive sessions resulting therefrom," even though it "did not specify a material or intentional failure to comply with its orders"); *Peng v. Gabay*, No. 05 Civ. 3939, 2009 WL 5216975, at *6 (D.N.J. Dec. 29, 2009) (concluding there was a "plausible basis in the record … to conclude a lesser sanction was imposed" based on the panel's shifting of adjournment fees and hearing costs to plaintiffs and its acknowledgement of plaintiffs' "incorrect discovery").

The Hitchcock Petitioners failed to meet the deadline to remedy errors in their claim. Several months of inactivity followed, including repeated failures to comply with discovery and meet and confer requests, and a failure to respond to Respondents' Motion to Strike and subsequent Motion for Sanctions. *See* Hitchcock Award at 3-4. In light of the Hitchcock Petitioners' failure to comply and the panel's warning by way of the order to update the Statement of Claim, there was at least a "barely colorable justification" for the panel's exercise of its authority under Rule 12212(c) to dismiss the claim with prejudice. *ReliaStar Life Ins.*, 564 F.3d at 86. While "[r]easonable people could disagree about whether sufficient warnings occurred … whether the panel correctly interpreted Rule [12212] is beyond the scope of [the Court's] review." *See Piston*, 823 Fed. App'x at 557.

In sum, neither panel exceeded its authority, and the Court finds no § 10(a)(4) violation. Accordingly, for the reasons stated above, the Petition to Vacate is **DENIED**.

### III.    Confirmation of the Awards

For the same reasons that vacatur is denied, Petitioners have also not met their "heavy burden" to defeat Respondent's motion to confirm the Awards. *See Wells Fargo Advisors LLC v.*

15

*Tucker*, 373 F. Supp. 3d, 418, 424 (S.D.N.Y 2019).  "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter."  *Shenzhen Lanteng Cyber Tech. Co., Ltd. v. Amazon.com Servs., LLC*, No. 23 Civ. 991, 2023 WL 6276691 (S.D.N.Y. Sep. 26, 2023), *aff'd*, No. 23-7593, 2024 WL 4356307 (2d Cir. Oct. 1, 2024) (summary order).  Accordingly, Respondent's Motion to Confirm the Arbitration Awards is **GRANTED**, and the Arbitration Awards are **CONFIRMED**.

## CONCLUSION

For the reasons given above, the Petition to Vacate the Arbitration Awards, ECF No. 1, is **DENIED**, Respondents' Motion to Confirm the Arbitration Awards, ECF No. 8, is **GRANTED**, and, accordingly, the Arbitration Awards are **CONFIRMED**.

The Clerk of Court is respectfully directed to terminate ECF Nos. 2 and 8, and to close this case.

SO ORDERED.

Dated: February 19, 2026
New York, New York

_____
DALE E. HO
United States District Judge

16